UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
Civil Action No. 1:23-cv-00041-LLK

**KIMBERLY F.**                                                                                                                **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act. [Doc. 1]. Plaintiff's fact and law summary is at Doc. 11, and the Commissioner's fact and law summary is at Doc. 17. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 7].

Because Plaintiff's two arguments are persuasive and the Administrative Law Judge's (ALJ's) decision is not supported by substantial evidence, the Court will REMAND this matter to the Commissioner for a new decision.

### The ALJ's decision

On January 6, 2022, the ALJ issued the Commissioner's final decision. [Administrative Record, Doc. 6 at 24-40]. The ALJ denied Plaintiff's claim, finding lack of disability during the period from November 15, 2014, when Plaintiff alleges that she became disabled, through June 30, 2021, when she was last insured for DIB.

The ALJ's decision was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that, between November 15, 2014, and June 30, 2021, Plaintiff did not engage in substantial gainful activity. *Id.* at 27.

Second, the ALJ found that, between November 15, 2014, and June 30, 2021, Plaintiff had the following severe, or vocationally significant, impairments: fibromyalgia, lumbar degenerative disc disease, tachycardia, obesity, major depressive disorder, anxiety. *Id.*

Third, the ALJ found that, between November 15, 2014, and June 30, 2021, Plaintiff did not have an impairment that satisfies the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 28.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, between November 15, 2014, and June 30, 2021, notwithstanding her physical impairments, Plaintiff could:

> … perform sedentary work as defined in 20 CFR 404.1567(a) except can lift/carry ten pounds occasionally and less than ten pounds frequently, can sit six hours in an eight hour workday, can stand and/or walk two hours in an eight hour workday, can occasionally climb ramps and stairs, no climbing of ladders, ropes, or scaffolding, unlimited balancing, occasional stooping, kneeling, crouching, and crawling, should avoid concentrated exposure to vibration, avoid concentrated exposure to extreme heat, extreme cold, and humidity, avoid all exposure to dangerous machinery and unprotected heights ….

[Doc. 6 at 31]. The ALJ further found that, notwithstanding her mental impairments, Plaintiff could:

> … perform simple, routine tasks, make simple work related decisions, with few if any workplace changes, and can maintain concentration for two hour segments throughout an eight hour workday.

*Id.*

Fourth, the ALJ found that, between November 15, 2014, and June 30, 2021, Plaintiff was unable to perform any past relevant work. *Id.* at 26.

Fifth, the ALJ found that, between November 15, 2014, and June 30, 2021, Plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy such as cutter/paster, document preparer, and addresser. *Id.* at 39.

**The medical evidence regarding Plaintiff's fibromyalgia**

The ALJ acknowledged that, between November 15, 2014, and June 30, 2021, Plaintiff suffered from severe, or vocationally significant, fibromyalgia. [Doc. 6 at 27].

In June 2020, Plaintiff's treating source, certified family nurse practitioner (FNP-C) Sara Magoon, completed the Fibromyalgia Medical Source Statement. [Doc. 6 at 1399-1404]. Nurse Magoon opined that Plaintiff lacks the stamina to sustain even a sedentary job eight hours a day, five days a week due to extreme fatigue and pain; needs to shift position at will from sitting, standing, or walking; needs to walk around during an eight hour workday every sixty minutes for three to five minutes at a time; needs to take unscheduled breaks during the workday lasting five to fifteen minutes each; needs to be off task twenty-five percent or more of the workday; experiences good days and bad days; has marked limitation in completing tasks in a timely manner; and would likely be absent more than four days of work a month. *Id.*

In June 2020, Plaintiff's treating source, advanced practice registered nurse (APRN) Britney Jackson, completed the Physical Medical Source Statement based on a primary diagnosis of fibromyalgia. *Id.* at 1406-09. Nurse Jackson opined that, in an eight hour workday, Plaintiff could sit for about two hours; stand/walk for a total of less than two hours; would need to shift positions at will from sitting, standing, or walking; would need to walk around every sixty minutes for ten minutes; would need one to two breaks lasting thirty to sixty minutes; would need to elevate her feet two to three feet for fifty percent of the workday; could never lift more than ten pounds; could use her hands for grasping or turning objects five percent of the workday, could use her fingers for fine manipulation for twenty-five percent of the workday; could use her arms for reaching overhead or in front of the body for ten percent of the workday; would likely be off task twenty-five percent or more of the workday; would be absent more than four days per month from work. *Id.*

It is undisputed that acceptance of the above limitations opined by nurses Magoon and Jackson (due to Plaintiff's fibromyalgia) would preclude performance of even sedentary jobs.

3

**The ALJ's findings regarding Plaintiff's fibromyalgia**

The ALJ found that, notwithstanding her fibromyalgia, Plaintiff can perform a limited range of sedentary work. [Doc. 6 at 27, 31]. In so finding, the ALJ weighed the disabling medical opinions of nurses Magoon and Jackson and found them to be "not persuasive" because: 1) the "level of treatment provided to the claimant by this provider is not consistent with the level of limitations assigned"; 2) treatment was "conservative"; 3) treatment records document Plaintiff's "caretaking activities," which indicate a "higher level of functioning than the limitations assigned by this provider"; 4) treatment records "do not document" the limitations assigned. *Id.* at 36.

**Plaintiff's first argument is persuasive.**

First, Plaintiff argues that the ALJ's focus on the level of treatment provided, its conservative nature, and the lack of objective documentation in the treatment records does not accord with applicable legal standards as it fails to consider the uniqueness of fibromyalgia as an impairment. [Doc. 11 citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)].

*Rogers* explained that diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses." *Rogers*, 486 F.3d at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). Nurses Magoon and Jackson delve into these matters in their Fibromyalgia Medical Source Statement and Physical Medical Source Statement. [Doc. 6 at 1399-1404, 1406-09].

In fibromyalgia cases, "physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion." *Preston*, 854 F.3d at 818. Due to the "unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia," evaluations that "focus solely upon objective evidence are not particularly

relevant." *Rogers*, 486 F.3d at 245.  "[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Id.* at 243.

Plaintiff's argument is persuasive because:

1. The ALJ found that the "level of treatment provided to the claimant by this provider is not consistent with the level of limitations assigned." [Doc. 6 at 36].  But the ALJ does not indicate what additional treatment could have been provided.

2. The ALJ found that treatment was "conservative." *Id.*  But the ALJ does not indicate what would have constituted more aggressive treatment.

3. The ALJ indicates that treatment records "do not document" the limitations assigned. *Id.*  The primary purpose of treatment records is not to document RFC limitations (in anticipation of a disability claim).  "[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243.

Additionally, the ALJ discounted the opinions of nurses Magoon and Jackson in light of Plaintiff's "caretaking activities throughout treatment records," which allegedly indicate a "higher level of functioning than the limitations assigned by this provider." [Doc. 6 at 36].  Those "caretaker activities" included "caring for her sick father in 2015 (Exhibit 3F), taking care of her adoptive parents in 2019 (Exhibit 20F), doing a lot of caretaking for her father before his death (Exhibit 37F), and caring for her elderly mother in 2021 (Exhibits 41F, 44F)." *Id.* at 37.  These were not substantial reasons for discounting the medical opinions of the nurses that treated Plaintiff for her fibromyalgia that she could not sustain even sedentary work.

**Plaintiff's second argument is persuasive.**

As detailed above, the ALJ rejected the opinions of her treating sources for **overstating** her limitations.  [Doc. 6 at 36]. But the ALJ rejected the opinions of the Commissioner's program physicians for **understating** her limitations.  *Id.* at 35. The program physicians acknowledged that Plaintiff suffers

5

from fibromyalgia but opined that she can still perform medium and light work. *Id.* at 174-76; 191-93. According to the ALJ, "the totality of evidence supported a greater level of restriction than what was opined by state agency consultants, who did not adequately consider the claimant's subjective complaints of pain and fatigue that supported further restricting the claimant to a limited range of sedentary exertional level consistent with the residual functional capacity set forth above." *Id.* at 35.

Plaintiff's second argument is that the ALJ effectively rejected **all** medical opinions and improperly relied on his own medical "expertise" to conclude that Plaintiff has an RFC for sedentary work. [Doc. 11 citing *Nguyen v. Sec'y*, 172 F.3d 31, 35 (1st Cir. 1999)]. The argument is persuasive. "As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms." *Rudd v. Comm'r*, 531 F. App'x 719, 726 (6th Cir. 2013) (quoting *Nguyen v. Sec'y*, 172 F.3d 31, 35 (1st Cir.1999)).

### Order

Because Plaintiff's two arguments are persuasive and the Administrative Law Judge's (ALJ's) decision is not supported by substantial evidence, the Court will REMAND this matter to the Commissioner for a new decision.

November 8, 2023

Lanny King, Magistrate Judge
United States District Court